[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATION FOR PREJUDGMENT REMEDY
The plaintiffs have applied for a prejudgment attachment of $1,250,000 against the defendant Milford Auto Exchange, LLC (Auto Exchange), including the real and personal property located at 74 South Washington Street, Milford, Connecticut. The plaintiffs' complaint alleges the liability of Auto Exchange to the plaintiffs based upon the obligation of General Statutes § 14-60. The court heard evidence on July 9, 2001, and invited briefs from the parties on two issues. First, under the facts of this case, does General Statutes § 14-60 impose strict liability upon Auto Exchange? Second, could the failure of Auto Exchange to keep control of its dealer plate proximately cause the injury to the plaintiffs? On July 23, 2001, the plaintiffs filed a request for leave to amend their complaint. The amended complaint adds a common law negligence count against Auto Exchange. This amendment brings the pleadings into conformance with the evidence and theories adduced by the plaintiffs at the July 9, 2001 hearing.
 I FACTS
Upon consideration of all the evidence adduced at the July 9, 2001 hearing, the court finds that the following facts came to light. The plaintiffs are three minor children who sustained injuries when two motor vehicles collided on November 4, 2000, on Route 30 in Vernon, Connecticut. The defendant, James Kiosse, was operating a 1988 GMC pick-up truck and towing a trailer on Route 30 when he turned the truck into the path of an automobile in which the plaintiffs were passengers. The Kiosse vehicle bore Connecticut dealer license plate DC-4093 at the time of the accident, which plate was registered on November 4, 2000, to Auto Exchange. That company was owned and operated by Francis Courtney.
The plaintiffs sustained multiple serious injuries as a result of the accident. They have incurred medical and surgical bills to date of $200,000. If the prejudgment remedy is appropriate, the request for an attachment of $1,250,000 is amply justified. The vehicle driven by Kiosse at the time of the November 4, 2000 collision was not owned by Auto Exchange and never had been owned by Auto Exchange. However, the dealer plate affixed to that vehicle actually belonged to and was registered to Auto Exchange. The Kiosse vehicle was uninsured at the time of the accident.
Kiosse did auto body work for Auto Exchange on an irregular basis from 1998, until May or June of 2000. He worked as an independent contractor, not as an employee. On occasion Kiosse used an Auto Exchange dealer plate, with the permission of Courtney, to transport on the public highways some vehicle owned by Auto Exchange. At no time did Courtney CT Page 11799 permit Kiosse to use an Auto Exchange dealer plate on a vehicle owned by Kiosse or anyone else other than Auto Exchange. There has been no contact or communication between Kiosse and Courtney from June, 2000, to the present.
On July 1, 2000, Courtney learned from a Newtown police officer that Kiosse was using on a motorcycle a cardboard replica of a motorcycle dealer plate owned by Auto Exchange. Courtney informed the police officer that Kiosse did not have permission to use an Auto Exchange dealer plate. Shortly thereafter Courtney discovered that one of his auto dealer plates was missing. Since he had other dealer plates to use, he decided not to bother to replace the missing plate. He suspected that the plate may have been stolen by Kiosse. Courtney took no action to report to the motor vehicle department or to any law enforcement authority that the dealer plate was missing. Despite the plaintiffs' claim that Kiosse can affirm that he had the permission of Courtney to use the dealer plate on November 4, 2000, the plaintiffs were unable to provide any evidence whatsoever at this prejudgment remedy hearing that Kiosse had the permission of Courtney to use the dealer plate or that Courtney had any knowledge that Kiosse would use the plate.
 II STANDARD OF REVIEW
To order a prejudgment remedy the court must determine that the credibility of witnesses and the totality of the evidence presented may weigh in the plaintiffs' favor. It is necessary to "evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiffs' claim." (Internal quotation marks omitted.) Tyler v. Schnabel,34 Conn. App. 216, 219, 641 A.2d 388 (1994). See General Statutes §52-278d(a). "Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." (Internal quotation marks omitted.) Village Linc Corp. v. Children'sStore, Inc., 31 Conn. App. 652, 657-658, 626 A.2d 813 (1993); Three SDevelopment Co. v. Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984). "The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." LedgebrookCondominium Assn., Inc. v. Lusk Corp., 172 Conn. 577, 584, 376 A.2d 60
(1977).
 III DISCUSSION CT Page 11800
A. STRICT LIABILITY UNDER GENERAL STATUTES § 14-60
Section 14-60(a) allows a motor vehicle dealer to loan a dealer license plate to a person for certain limited purposes connected to the dealer's business.[1] The statute limits the loan to use on a vehicle owned by the dealer or a vehicle sold by the dealer with registration pending. See General Statutes § 14-60(a). In no case may the loan extend more than thirty days. See General Statutes § 14-60(a). If the vehicle in question has been sold and the registration is pending, the dealer must take proof of insurance from the new owner/user of the vehicle. The statute was amended in 1973[2] to hold the dealer jointly liable for any damage caused by operation of the vehicle on which the loaned dealer plate was displayed if the vehicle displaying the dealer plate is not insured and is in an accident causing damage.
The purpose for the amendment to the statute in 1973 was articulated on the floor of the Connecticut House of Representatives at the time of its enactment as follows: "[T]he obvious intent of this statute is to protect the public by preventing the loaning of either plates or motor vehicles when the vehicle to be operated is not insured. . . . Unfortunately, time and time again, we've had situations where there was no policy coverage on the part of the . . . operator. . . . Other states have had the same problem. Massachusetts has solved it. New York has solved it and in both cases the lender is liable. Mr. Speaker, the intent is so obvious [sic] to protect the public that we should take this step forward and require that in any situation where the individual who loans the plates or loans the automobile violates the law, he too shall be liable." 16 H.R. Proc., Pt. 8, 1973 Sess., p. 3654 (remarks of Representative Samuel S. Freedman); see also 16 S. Proc., Pt. 5, 1973 Sess., pp. 2259-60 (remarks of Senator George C. Guidera). The added 1973 provision for joint dealer liability on a loaned dealer plate was a reaction to DeRubbo v. AetnaIns. Co., 161 Conn. 388, 392, 288 A.2d 430 (1971) (dealer not liable where uninsured vehicle using loaned dealer's plate was not owned by dealer). See Cook v. Collins Chevrolet, Inc., 199 Conn. 245, 249,506 A.2d 1035 (1986).
"In the case of strict liability . . . the defendant is liable without fault upon proof of the violation of the statute and proximate causation." Gore v. People's Savings Bank, 35 Conn. App. 126, 131,644 A.2d 945 (1994), rev'd on other grounds, 235 Conn. 360, 665 A.2d 1341
(1995). "In order to base a recovery upon negligence in the violation of a statute, it must appear that the injury suffered was of a nature which the statute was intended to guard against. . . . The violation of a statute which forbids the doing of certain acts does not give a cause of actionable negligence in favor of private individuals, unless the statute was designed to prevent such injuries as were suffered by the individual CT Page 11801 claiming damages, and unless it imposes upon the one violating the statute a specific duty for the protection or benefit of him who claims damage for the violation. It is a well-settled rule that a person cannot recover from another for negligence based upon the violation of a statute or ordinance which is not intended for his protection." (Citations omitted; internal quotation marks omitted.) Gonshar v. Kelson,114 Conn. 262, 265-266, 158 A. 545 (1932). Section 14-60 imposes upon dealers the duty to take insurance information from those to whom they loan a dealer plate. The statute does not impose a general liability upon the dealer for someone's misuse of such a dealer plate after its theft or unexplained disappearance. Thus, the statute protects only members of the public who are injured when the dealer has used the plate in a way contemplated by the statute. "A cause of action that is solely statutory in its derivation cannot be judicially expanded to encompass grievances for which the legislature has not seen fit to provide a remedy." Cook v.Collins Chevrolet, Inc., supra, 199 Conn. 251-252. If the Connecticut legislature had seen fit to impose liability upon persons whose license plates are lost or stolen and which plates then turn up on unregistered vehicles involved in motor vehicle accidents, the legislature could have enacted such a statute. It has not done so, either as to the public in general or auto dealers in particular.
B. COMMON LAW NEGLIGENCE
"The rule which is applicable to actions for negligence based upon the violation of a statutory duty is to all intents and purposes the same as the rule applicable to actions for negligence based upon a violation of a common-law duty. Where there is no duty, there can be no negligence." (Internal quotation marks omitted.) Gonchar v. Kelson, supra,114 Conn. 266. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . [T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case. . . . The first part of the test invokes the question of foreseeability, and the second part invokes the question of policy." (Citations omitted; internal quotation marks omitted.) Gazo v.Stamford, 255 Conn. 245, 250, 765 A.2d 505 (2001).
Courtney knew that Auto Exchange was required to maintain a record of the whereabouts of each loaned number plate and take insurance CT Page 11802 information when the plate was to be used on a vehicle not owned by Auto Exchange. It was foreseeable by him that a vehicle using or misusing one of his dealer plates could be involved in a motor vehicle collision. It was foreseeable that a dealer plate missing from his possession could be utilized on the public highways, whether by his permission or not. When Courtney discovered the dealer plate to be missing on July 9, 2000, it was eminently foreseeable that the plate could be utilized on an unregistered vehicle on Connecticut roads.
"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of the world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr.,P.C., 252 Conn. 623, 633, 749 A.2d 630 (2000). This court concludes that it is not the public policy of the State of Connecticut to impose upon an auto dealer general liability when his dealer plate is lost or stolen and then misused on a vehicle involved in an auto accident. The legislature has made no law to that effect. No evidence has been offered to the court to support a finding that such a public policy exists in Connecticut. This is not a case in which Auto Exchange put into the hands of Kiosse an unregistered motor vehicle with a key in the ignition. There is no intrinsic danger in a dealer's lost license plate. Auto Exchange did not owe a common law duty of care to the plaintiffs in this case.
Even if the court were to find the existence of a duty by Auto Exchange to the plaintiffs, it is not possible to get beyond the element of causation. "The basic test is . . . whether the defendants' negligence created the risk of a particular harm, and was a substantial factor in causing that harm." Kiniry v. Danbury Hospital, 183 Conn. 448, 455,439 A.2d 408 (1981). The Connecticut Supreme Court ruled squarely on this issue in the case of Gonchar v. Kelson. "It is the way in which the automobile is operated and not the fact of its being registered or unregistered which really brings about the injury. To be sure the accident would not have occurred had the automobile not been upon the highway, and an unregistered automobile would not be there if the law had CT Page 11803 not been violated; . . . but as already noted, we have held that this fact would not be regarded as a proximate cause of an injury arising out of that operation." Gonchar v. Kelson, supra, 114 Conn. 269. In the case at hand, the Kiosse vehicle may have been upon the highway even without the use of the Auto Exchange dealer plate. There was evidence, for example, that Kiosse had previously used a cardboard replica of an Auto Exchange dealer plate on a motorcycle. The causal connection between Auto Exchange's careless supervision of its dealer plate and the grievous injuries to the plaintiffs in this case is too remote to sustain a cause of action against Auto Exchange in common law negligence.
 IV CONCLUSION
Because the plaintiffs have failed to adduce evidence that Auto Exchange loaned the dealer plate to Kiosse, the plaintiffs have not shown probable cause that they will prevail on the merits of this case. Auto Exchange's loss of its dealer plate and failure to report the loss does not constitute common law negligence. The application for prejudgment remedy is denied.
Winslow, J.